Joseph DELAFUENTE, Appellant

v.

The STATE of Texas.

No. PD–0066–13.

Court of Criminal Appeals of Texas.

Nov. 27, 2013.

---

Clay S. Conrad, Attorney at Law, Houston, TX, for Appellant.

Lisa McMinn, State Prosecuting Attorney, Austin, TX, Lisa C. McMinn, State's Attorney, Austin, for The State.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, PRICE, KEASLER, HERVEY, and COCHRAN, JJ., joined.

Appellant was convicted of Class B misdemeanor possession of marijuana and

sentenced to three days' confinement and a fine.[1] On appeal, he challenged the trial court's denial of his motion to suppress, arguing that the arresting officer lacked reasonable suspicion to stop the vehicle in which he was traveling. The court of appeals reversed, ruling that there were no specific, articulable facts in the record to support reasonable suspicion for the stop. We granted the state's petition for discretionary review, vacated the court of appeals's judgment, and remanded so that court could determine the effect, if any, of our then-recent decision in *State v. Mendoza*.[2] The appellate court again reversed, and we granted the state review on two grounds. We now reverse the court of appeals's judgment and reinstate the trial court's denial of the motion to suppress.

### I. Facts and Procedural History

On June 24, 2009, a police officer patrolling Interstate 10 initiated a traffic stop based on his observation of traffic congestion in the inside lane. At the hearing on defendant's motion to suppress, neither the state nor appellant offered live testimony, and the state stipulated that appellant's arrest was warrantless. The only evidence before the trial court was the officer's offense report.

On 06/24/09, at approximately 9:12 AM, I was on patrol on Interstate 10 in Waller County, Texas. I observed a traffic congestion in the inside westbound lane near the Igloo Road Overpass. Traffic volume was moderate. I inspected further and observed a grey Chevrolet 4-door sedan ... traveling below the prima facie limit of 65 miles per hour and Impeding Traffic. I paced the vehicle, which was traveling at approximately 52 miles per hour, the initial speed utilizing the certified speed odometer on my marked patrol unit and confirmed with the in-car Doppler radar unit. I initiated a traffic stop of the vehicle.

. . .

Initiation of the traffic stop required utilizing the rear emergency lights on the patrol vehicle to allow a safe lane change of my patrol vehicle, from the center to the inside lane. The driver of the Chevrolet sedan immediately yielded to the inside shoulder. I approached the driver's window, identified myself, stated the reason for the traffic stop and requested a driver's license from the driver and the front passenger. I immediately noticed a strong and distinct odor of both fresh and burnt marijuana.

. . .

The driver, Melissa Agueros, said that she did not have a driver's license but produced a valid Texas identification card. The passenger, appellant, produced a valid Texas driver's license. The officer told Agueros that he was going to cite her for operating a motor vehicle without a license and appellant for permitting an unlicensed person to operate a motor vehicle. A check through the Waller County Sheriff's Department revealed that neither had a criminal history. Two small children in the back seat were properly secured in child-safety seats. Both adults seemed nervous.

The officer told both adults that he smelled marijuana in the vehicle. The driver began to cry, and appellant stiffened. The officer asked appellant to get out of the car when it was safe to do so and join the officer on the non-traffic side of the car. "I asked Mr. Delafuente, 'Where is it' and received a response of 'it's in the trunk.'" Appellant claimed sole responsibility for the marijuana and excul-

---

1. *See* Tex. Health & Safety Code § 481.121.

2. 365 S.W.3d 666 (Tex.Crim.App.2012).

pated Agueros. With Agueros's assistance, the officer searched the interior of the car. He recovered a cloth bag that contained marijuana, paraphernalia, and a partially smoked roach from the passenger-side cup holder and two small pipes from the passenger floorboard. The trunk yielded a tube that was stained with smoke residue. The officer released Agueros and arrested appellant.

With no evidence to contradict the offense report, the trial court accepted the officer's statement that the vehicle in which appellant was a passenger was impeding traffic as credible and entered findings of fact and conclusions of law that "Defendant's[ [3] ] vehicle was impeding traffic" and that "[t]he officer had probable cause for the stop because the defendant[sic][ [4] ] was driving slow[ly] and impeding traffic."

The court of appeals reversed, ruling that the trial court found no specific, articulable facts to support reasonable suspicion. *Delafuente v. State*, 367 S.W.3d 731, 734–35 (Tex.App.–Houston [14th Dist.] 2012) ("There was no evidence that the normal and reasonable movement of traffic was impeded by appellant's driving."), *pet. granted*, 369 S.W.3d 224 (Tex.Crim.App. 2012). The state prosecuting attorney filed a petition for discretionary review in this Court, which we granted. We vacated the court of appeals's judgment and remanded the cause to it so that it could determine the effect, if any, of our then-recent ruling in *State v. Mendoza*[5] on its decision. *Delafuente v. State*, 369 S.W.3d 224 (Tex.Crim. App.2012). On remand from this Court, the court of appeals found that *Mendoza* did not affect its holding and again re-

versed the denial of appellant's suppression motion. *Delafuente*, 389 S.W.3d 616, 622–23 (Tex.App.–Houston [14th Dist.] 2012).

## II. Analysis

We granted the state's petition on two grounds for review: (1) "Did the Court of Appeals' determination that the traffic stop was illegal ignore relevant facts and rational inferences, require the state to rebut innocent explanations, and misconstrue *Ford v. State*, 158 S.W.3d 488 (Tex. Crim.App.2005)?"; and (2) "Did the Court of Appeals err by refusing to remand to the trial court for additional findings of fact and conclusions of law?" We hold that the court of appeals did not commit error on the second issue, but it did err on the first by ignoring relevant facts and failing to make reasonable inferences.

### A. The Fourth Amendment

In a hearing on a motion to suppress for violation of Fourth Amendment rights, a defendant must offer evidence that rebuts the presumption of proper police conduct, such as by alleging that the search or seizure was executed without a warrant. Once the defendant has made this threshold showing, the burden shifts to the state to prove either the existence of a warrant or that the search or seizure was reasonable. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App.2005) (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex.Crim. App.2002)). In this case, it is undisputed that the officer did not have a warrant to stop the vehicle, so the state was required to show that the stop was reasonable.

---

3. The offense report does not indicate who owned the car.

4. The officer's report made it clear that Agueros, not appellant, was driving.

5. 365 S.W.3d 666 (Tex.Crim.App.2012) ("[B]ecause the written findings in this case are ambiguous and there is no credibility determination," the case is remanded for supplemental findings. *Id.* at 667.).

■ A police officer lawfully conducts a temporary detention when he has reasonable suspicion that an individual is involved in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). Reasonable suspicion requires more than a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be, engaging in criminal activity. *Ford*, 158 S.W.3d at 492 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001)). The reasonable-suspicion determination is an objective one made by considering the totality of the circumstances. *Id.* at 492–93.

### B. On Appeal

■ Appellate review of a ruling on a motion to suppress is a bifurcated analysis. Appellate courts must give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record, but review questions of law *de novo*. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (reviewing courts defer to trial-court findings of fact unless clearly erroneous); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997) ("especially when the trial court's fact findings are based on an evaluation of credibility and demeanor"). In this case, the trial court issued explicit findings of fact declaring credible the officer's statement that the vehicle was "impeding traffic."

### C. Application

■ We do not find any evidence supporting the appellate court's ruling that the trial court abused its discretion in crediting the offense report. Nothing indicates that the officer was untrustworthy or that his report was somehow created outside the bounds of standard procedure. In fact, during its analysis, the appellate court's opinion relied on facts stated in the report. *Delafuente*, 389 S.W.3d at 622. Disagreeing with the trial court's application of law to fact does not mean that, in finding those facts, the lower court committed an error so egregious that the credibility determination does not survive our "almost total deference." *Guzman*, 955 S.W.2d at 89. The trial court did not abuse its discretion in crediting the offense report, the only evidence before it.

That said, the officer's bare "finding" that the vehicle was impeding traffic is a legal conclusion, not a factual finding, because it asserts a violation of Section 545.363(a) of the Texas Transportation Code. In all likelihood, the officer meant simply to say that he saw a line of vehicles stacked up behind one slowly moving car, but the phrase "impeding traffic" is legally meaningful when used in conjunction with Section 545.363(a), so we cannot take this impediment at face value. We do not, however, need to remand to the trial court for additional findings under *Ford* or *Mendoza* because the trial court unambiguously found the offense report credible.

The facts in *Ford* did not support reasonable suspicion because, in that case, the state offered only the officer's bare conclusory statement in support of its reasonable-suspicion claim. *Ford, supra* at 493. The trial court in *Ford* was presented with only a conclusory statement that Ford was violating a traffic law.[6] In this case, the

---

6. "The court of appeals stated that 'Trooper Peavy testified that he saw [Ford] following another car at a distance that Peavy believed was insufficient and, thus, in violation of the statute.'... The record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which Peavy could reasonably conclude that Ford actually

court of appeals analogizes to *Ford* by pointing out that the officer provided his conclusory opinion that the vehicle in question was "impeding traffic." *Delafuente*, 389 S.W.3d at 623. It is true that, in this case, the officer used a legally meaningful phrase to describe what he saw, but unlike *Ford*, he did more than provide an unsubstantiated subjective assertion—he provided other facts to support that statement. The language in the trial court's findings specifically referred only to the report's conclusion that the vehicle was impeding traffic, but that conclusion was necessarily based on the officer's other observations of "traffic congestion" with "moderate" traffic volume, presumably caused by the "the gray Chevrolet 4–door sedan ... traveling below the prima facie limit of 65 miles per hour" at an actual speed of 52 miles per hour. The trial court could not have credited the report's conclusion without crediting the rest of its factual contents.

The *Mendoza* trial court did make findings, but they were ambiguous and did not address a crucial credibility determination. *Mendoza*, *supra* at 672–73. We reiterated that trial courts, as "Johnny[s]–on–the–Spot," are much better situated than appellate courts to make determinations of credibility and historical facts, and we therefore remanded to the trial court so it could clarify as to which part of the officer's testimony it credited and what facts it found. *Id.* at 669, 673. The instant case is also distinguishable from *Mendoza* because there was no evidence to contradict the offense report, which the trial court explicitly found credible. Because we must therefore use the facts contained in

the offense report, we overrule the state's second ground for review.

## D. Reasonable Suspicion Determination

The court of appeals's ruling was correct to the extent that remand to the trial court for additional fact-finding is unnecessary in this case. The reasonable suspicion test calls for consideration of specific, articulable facts *and reasonable inferences therefrom*-a totality of the circumstances,[7] not the limited reading the court of appeals performed. The facts stated in the officer's report are sufficient to support a ruling of reasonable suspicion.

The report indicates that there was "*a* congestion" in the inside lane. The use of the article "a" allows at least an inference of one particular backlog of vehicles, as opposed to general "congestion." *See* WEBSTER'S II NEW COLLEGE DICTIONARY 1 (Margery S. Berube et al. eds., Houghton Mifflin 1999) (defining the indefinite article "a" as "used before nouns and noun phrases that denote a single, but unspecified, person or thing"). The statement in the offense report that the congestion was in a single lane, not spread over the freeway as a whole, also supports this inference; if the congestion was a result of heavy traffic,[8] it would not have been limited to a single lane.

The report also asserts that the vehicle was moving slowly. Driving at a speed that is less than the posted limit is not, by itself, sufficient for reasonable suspicion; a violation occurs only when the normal and reasonable movement of traffic is impeded. *Texas Dept. Pub. Safety v. Gonzales*, 276 S.W.3d 88, 93 (Tex.App.–San Antonio 2008) (citing cases from multiple intermediate

---

was, had been, or soon would have been engaged in criminal activity. Instead, the trial court was presented only with a conclusory statement that Ford was violating a traffic law." *Ford*, 158 S.W.3d at 493.

7. *Ford*, *supra* at 492–93.

8. The offense report indicates that traffic volume was moderate.

appellate courts for the same proposition). However, the report asserts that the vehicle was moving thirteen miles per hour under the speed limit in the "inside lane," as verified by pacing and radar. It is common knowledge that the inside lane on a freeway is the passing, or "fast," lane. *See* Tex. Transp. Code § 545.051(b) ("An operator of a vehicle on a roadway moving more slowly than the normal speed of other vehicles ... shall drive in the right-hand lane available for vehicles, or as close as practicable to the right-hand curb or edge of the roadway, unless...."). Additionally, the facts indicate that the officer had to move from the center lane to the inside lane to signal the vehicle to pull over, and it promptly moved to the inside shoulder. There would be no reason for the vehicle to pull onto the left shoulder unless it was already in the inside lane. Driving slowly in the inside lane is more likely to effect a traffic backup because the normal flow of traffic in that lane is usually moving more rapidly than in the lanes to its right.

■ Taken in isolation, each of these facts might not support reasonable suspicion, but, considered together, they support the reasonable inference that the vehicle's slow pace in the inside lane caused the traffic congestion that the officer observed. Taken together, these facts and inferences are sufficient to lead a reasonable officer to conclude that appellant was engaged in criminal activity, namely a violation of Section 545.363(a).

We therefore sustain the state's first ground for review. The court of appeals disregarded relevant facts and rational inferences when it ruled that the officer lacked reasonable suspicion to make the stop.

### III. Conclusion

The trial court's explicit language made it clear that the court found the officer's offense report credible. We therefore affirm the appellate court's ruling that remand to the trial court for additional fact-finding is unnecessary. However, the court of appeals read the report too narrowly and disregarded reasonable inferences from the included facts. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's denial of appellant's motion to suppress.

WOMACK, J., concurred.

ALCALA, J., filed a dissenting opinion.

This case requires this Court to once again decide what to do when the losing party on a motion to suppress has requested explicit findings of fact and conclusions of law, but the findings made by the trial court are wholly inadequate. The majority opinion decides that a remand for supplemental findings is unnecessary, but I disagree. I conclude that the trial court, in essence, made only one fact finding and that it is an inadequate basis upon which to determine whether the officer had reasonable suspicion to detain the sedan occupied by Joseph Delafuente, appellant. I would sustain the second ground presented in the State's petition for discretionary review and reverse and remand the case to the court of appeals with instructions to abate to the trial court for additional findings. I, therefore, respectfully dissent.

### I. Existing Findings of Fact are Inadequate

To call this record sparse would be a gross understatement. No witness testified at the motion to suppress hearing. The entire record consists of a two-page offense report that was admitted into evidence without objection. The offense report describes these facts:

1. The officer was on patrol on June 24, 2009, at 9:12 a.m., on Interstate 10;

2. The officer observed "a traffic congestion" in the inside westbound lane near the Igloo Road Overpass;

3. Traffic volume was "moderate";

4. The officer "inspected further" and observed a sedan moving at 52 miles per hour in a zone with a 65 mile-per-hour maximum speed limit;

5. The sedan was "Impeding Traffic";

6. To effect a traffic stop, the officer was "required [to] utiliz[e] the rear emergency lights on the patrol vehicle to allow a safe lane change of [the] patrol vehicle, from the center to the inside lane"; and

7. The sedan immediately yielded to the inside shoulder.

In light of the sparse evidentiary record, it is no surprise that the trial court's findings of fact and conclusions of law are also minimal. The trial court made only one conclusion of law: "The officer had probable cause for the stop because the defendant was driving slow and impeding traffic." On its face, this conclusion is erroneous because the defendant was not even driving the vehicle at the time of the stop; rather, he was in the passenger seat.

Aside from the single conclusion of law to which this Court owes no deference,[1] the trial court made two findings of fact that essentially amount to a single finding of fact. In what is characterized as its first fact finding, the trial court determined that "[t]he attorney agreed on [the] record that the offense report be admitted as evidence. Both [the] State and Defense waived their right to present oral testimony or cross-examine the officer." This statement does not describe the events that took place on the morning of the stop, but instead is a description of what happened at the motion-to-suppress hearing and the means by which the offense report became the sole evidence in the record. After examining the content of this first finding, it is clear that it is immaterial to the matters at issue in this appeal concerning the validity of the traffic stop.

In its second finding of fact, the trial court determined that appellant's vehicle was impeding traffic. This finding states, "In the offense report the officer states that defendant was impeding traffic. Since there was no contraverting [sic] testimony presented and no cross-examination, the Court accepted that statement as fact. Therefore[,] the Court finds that Defendant's vehicle was impeding traffic." The majority opinion recognizes, and I agree, that the officer's bare assertion that appellant's car was "impeding traffic" is a legal conclusion, not a factual finding, because it describes a particular violation of the law. The trial court's adoption of that legal conclusion as a finding of fact does not transform it into something it is not; it remains a conclusion of law. *See State v. Sheppard*, 271 S.W.3d 281, 291–92 (Tex. Crim.App.2008) (taking note of the problem of "mixing the apples of explicit factual findings with the oranges of conclusions of law," and stating that, regardless of how they are labeled, factual findings consist of "who did what, when, where, how, or why" and "do not include legal rulings on 'reasonable suspicion' or 'probable cause';

---

**1.** *See State v. Mazuca*, 375 S.W.3d 294, 307 n. 68 (Tex.Crim.App.2012) (stating that legal conclusions are " 'subject to *de novo* review, not deference' ") (quoting *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex.Crim.App.2008)); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim.App.2010) ("Although we give almost total deference to the trial court's determination of historical facts, we conduct a *de novo* review of the trial court's application of the law to those facts.").

those are legal conclusions subject to *de novo* review, not deference"). In characterizing this second finding, the majority opinion states, "In this case, the trial court issued explicit findings of fact declaring credible the officer's statement that the vehicle was 'impeding traffic.'" Although I disagree that this is an explicit statement about the officer's credibility, I agree that the trial court implicitly found that the officer was credible in stating his subjective belief that the vehicle was impeding traffic. But an officer's honest belief that a traffic violation is being committed does not equate to reasonable suspicion, which is an objective standard that depends on the existence of specific, articulable facts. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex.Crim.App.2005) (noting that reasonable suspicion determination is based on "specific, articulable facts"; standard is an objective one and "disregards any subjective intent" of officer making stop). A trial court that adopts an officer's legal conclusion as its sole relevant fact finding does not provide an appellate court an adequate basis upon which to review a suppression ruling.

Importantly, the trial court's fact findings utterly fail to address the key circumstances that an appellate court would need to consider to make a reasonable-suspicion determination, such as whether the driver of the sedan was driving more slowly than other traffic, whether the sedan affected the normal and reasonable movement of traffic, and whether reduced speed was somehow necessary for the safe operation of the vehicle or to comply with the law. *See* Tex. Transp. Code § 545.363(a). Section 545.363(a) of the Transportation Code states, "An operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." *Id.* Several Texas courts of appeals have held that driving more slowly than the posted speed limit, without more, is inadequate to establish that the driver is impeding traffic. *See Tex. Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 93 (Tex.App.–San Antonio 2008, no pet.) (driving 45 miles per hour in a 65 mile-per-hour zone did not constitute impeding traffic in absence of evidence describing overall amount of traffic on highway); *Richardson v. State*, 39 S.W.3d 634, 639 (Tex.App.–Amarillo 2000, no pet.) (driving 25 miles per hour below speed limit did not constitute impeding traffic because "there was little or no traffic on the road" and other vehicles had no difficulty passing slower one); *Davy v. State*, 67 S.W.3d 382, 393 (Tex.App.–Waco 2001, no pet.) (traffic not impeded because no other vehicles were present on the road at time of stop). Because the trial court made only one finding that the vehicle "impeded traffic" without even explaining what that term may have meant in the context of this case, I disagree with the majority opinion's characterization of the trial court's fact findings as including all the facts needed to decide this case.

## II. This Court's Precedent Requires Reversal and Abatement for Additional Fact–Findings by the Trial Court

Although the trial court never made any finding that all of the facts in the offense report were true, it appears that the majority opinion accepts the entire report as true because the evidence was undisputed at trial. But this Court has never equated undisputed testimony with credible testimony. *State v. Elias*, 339 S.W.3d 667, 674 (Tex.Crim.App.2011) (citing *State v. Ross*, 32 S.W.3d 853, 857 (Tex.Crim.App.2000)). Even though evidence is undisputed, a trial court retains the authority to disbelieve it. *See id.* (citing *Ross*, 32 S.W.3d at 857). Furthermore, the losing party on a motion

to suppress is, upon request, entitled to "essential findings" of fact that are "adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Elias,* 339 S.W.3d at 674 (quoting *State v. Cullen,* 195 S.W.3d 696, 699 (Tex.Crim.App.2006)).[2] As we have held in several recent decisions, an appellate court must abate to the trial court for additional findings of fact when a party has requested findings of fact and the findings that are made by a trial court are so incomplete that an appellate court is unable to make a legal determination. *See State v. Saenz,* 411 S.W.3d 488, 497–98 (Tex.Crim.App.2013) (reversing and remanding for additional fact findings because dispositive historical facts were absent from trial court's findings); *Elias,* 339 S.W.3d at 674 (same); *State v. Mendoza,* 365 S.W.3d 666, 673 (Tex.Crim. App.2012) (reversing and remanding for additional fact findings because dispositive credibility determination was absent from trial court's findings); *Cullen,* 195 S.W.3d at 699 (reversing and remanding for fact findings because trial court completely declined a proper request to issue them).[3] "We will not presume factual findings that

may be dispositive in a case when a trial court's findings are an inadequate basis upon which to make a legal conclusion and when those findings have been properly requested by a losing party." *Saenz,* 411 S.W.3d at 495–96; *see Elias,* 339 S.W.3d at 674; *Mendoza,* 365 S.W.3d at 673; *Cullen,* 195 S.W.3d at 699.

As in the cases cited above, a similar inadequacy exists in this trial court's findings regarding the historical facts to be considered when making the ultimate legal determination whether the officer had reasonable suspicion to detain the sedan for impeding traffic. To imply all facts in favor of the trial court's ruling, as the majority opinion in essence purports to do, conflicts with our earlier statements indicating that an appellate court should avoid making broad presumptions and should instead remand for supplemental findings when the trial court fails to enter essential and potentially dispositive findings. *See Elias,* 339 S.W.3d at 675–76. After *Cullen* and *Elias,* such broad presumptions in favor of the trial court's ruling are appropriate only when there are no findings of fact and none have been properly requested.

**2.** In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias,* 339 S.W.3d 667, 674 (Tex.Crim.App. 2011) (citing *State v. Ross,* 32 S.W.3d 853, 857 (Tex.Crim.App.2000)). Because fact findings were properly requested by the losing party in this case, this presumption is inapplicable. *See State v. Mendoza,* 365 S.W.3d 666, 673 (Tex.Crim.App.2012).

**3.** As we noted recently in *State v. Saenz,* however, "[t]he trial court is, of course, limited to making findings based on the facts that currently appear in the record." 411 S.W.3d 488, 497 n. 6 (Tex.Crim.App.2013). Given the limited nature of the record in this case, I

acknowledge that the trial court may find it difficult to remedy the inadequacy of its original findings. But such a task is not impossible, given the state of the record. The trial court's supplemental findings could, for example, expressly state whether it found credible the officer's statements in the offense report; whether there was a traffic congestion and whether that congestion was caused by appellant's vehicle; whether that congestion was different from ordinary traffic flow at that location; whether traffic volume was "moderate" and what that term might have meant in the context of this case; whether the speed at which appellant's vehicle was traveling was one that would affect traffic conditions; and whether appellant's vehicle was traveling in the lane designated for faster-moving vehicles, as the majority opinion suggests.

*See Ross,* 32 S.W.3d at 857. Such is clearly not the case here.

The trial court's sole fact finding surrounding the traffic stop used the same conclusory phrase "impeding traffic" that the officer used in his offense report. The majority opinion surmises that what the officer really intended to say was that there was "a line of vehicles stacked up behind one slowly moving car." But that is pure speculation. Neither the trial court's fact findings nor the offense report explains what the officer actually meant by the term "impeding traffic." The officer could have been using the term in its technical legal meaning as the traffic offense, in a factual description as this Court's majority opinion suggests, or something else. We simply do not know, and I disagree that this Court should supplant the trial court as fact finder by ascribing meanings to terms that are unclear.

I also disagree that this Court should become the fact finder by adopting the facts described in the offense report when those facts have not expressly been adopted by the trial court. The majority opinion states, "It is true that, in this case, the officer used a legally meaningful phrase to describe what he saw, but unlike *Ford,*[4] he did more than provide an unsubstantiated subjective assertion—he provided other facts to support that statement." The opinion goes on to reason that the "trial court could not have credited the report's conclusion [that the vehicle was impeding traffic] without crediting the rest of its factual contents." This assessment does not alter the fact that the trial court failed to make any findings as to the veracity of the factual statements contained in the offense report. In fact, the trial court

stated that its adoption of the officer's conclusion that the vehicle was impeding traffic was based on the uncontroverted nature of the evidence. But, as noted above, uncontroverted is different from credible, and even if the trial court believed the officer to be credible in his subjective belief that appellant's sedan was impeding traffic in violation of the law, the fact findings do not include articulable facts from which this Court could assess whether the officer had reasonable suspicion to make a traffic stop for that offense. *See Ford,* 158 S.W.3d at 492–93.

I conclude that the trial court's single relevant fact finding that the sedan was impeding traffic is based solely on an unsubstantiated, subjective assertion that is inadequate to establish that the State met its burden to prove that the stop was reasonably justified. *See Ford,* 158 S.W.3d at 493 (where arrest is shown to be warrantless, burden shifts to State to prove reasonableness of seizure, and specific, articulable facts must go beyond "mere opinions" or "a conclusory statement that [appellant] was violating a traffic law"); *Bishop v. State,* 85 S.W.3d 819, 822 (Tex.Crim.App.2002) (State has burden of proof in warrantless seizure). I disagree with the majority opinion's holding that there is no "need to remand to the trial court for additional findings under *Ford* or *Mendoza*[5] because the trial court unambiguously found the offense report credible." As explained above, this is not an accurate representation of the trial court's fact findings, which address only the discrete legal conclusion that the vehicle was "impeding traffic," and which fail to make any assessment of the credibility or significance of the other statements in the offense report. I would hold that the court of appeals erred by failing to abate

---

4. *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim.App.2005).

5. *Ford,* 158 S.W.3d at 493; *Mendoza,* 365 S.W.3d at 673.

the case for complete findings of fact. I would sustain the State's second ground and reverse the judgment of the court of appeals. Because the majority opinion reinstates the trial court's suppression ruling instead of remanding to the court of appeals with instructions to abate for supplemental findings, I respectfully dissent.